William M. TAYLOR, Plaintiff,

v.

Milton E. NIX, Jr., Garland R. Hunt, Garfield Hammonds, Jr., Eugene P. Walker and L. Gale Buckner, Defendants.

No. 1:05 CV 2462 TCB.

United States District Court,
N.D. Georgia,
Atlanta Division.

Feb. 2, 2007.

William E. Hoffmann, Jr., Jessica Joan-Marie Hagen, King & Spalding, LLP, Atlanta, GA, for Plaintiff.

John C. Jones, Freeman Mathis & Gary, Kathleen Mary Pacious, Office of State Attorney General, Pattie Jane Williams, State of Georgia Law Department, Atlanta, GA, for Defendants.

## ORDER

BATTEN, District Judge.

This matter is before the Court on the parties' cross-motions for summary judgment. For the reasons that follow, the Court grants Defendants'[1] motion and denies Plaintiff's motion.

1. For ease of reading, the Defendants are collectively referenced herein as "the Board."

## I. Background

Plaintiff is currently a prisoner in the Georgia state prison system. On September 21, 1979, he was convicted of one count of aggravated sodomy (by inserting his sex organ into the mouth of a ten-year-old male child, with force and against his will) and one count of child molestation (by kissing a nine-year-old child on the lips and attempting to remove the child's clothing). At the time he committed these offenses, Plaintiff was on parole for two counts of kidnapping arising from offenses against two boys, ages six and seven.

Plaintiff was sentenced to life on the aggravated sodomy charge plus ten years, to run consecutively, on the child molestation charge. On March 28, 1980, the Georgia Superior Courts Sentence Review Panel reduced his sentence such that his two periods of incarceration would run concurrently rather than consecutively. The Georgia Court of Appeals affirmed the conviction. *Taylor v. State,* 174 Ga.App. 323, 329 S.E.2d 625 (1985).

On June 27, 1988, Plaintiff was granted parole. His certificate of parole contains the following language next to the heading "Special Conditions": "YOU ARE NOT TO HAVE ANY CONTACT WITH ANY MINOR MALES!"

Approximately six months after being paroled, on December 3, 1988, Plaintiff encountered a six-year-old boy while shopping at a shopping center in Fulton County, Georgia. He took the boy to a delicatessen within the shopping center without obtaining the permission of the boy's mother and in violation of a special condition of his parole. The State of Georgia indicted Plaintiff for kidnapping and enticing a child for indecent purposes. On October 10, 1989, Plaintiff pled guilty to the kidnapping charge.[2]

On November 21, 1989, the Georgia State Board of Pardons and Paroles (the "Board") revoked Plaintiff's parole, based upon the kidnapping conviction. Plaintiff was returned to prison.

In 1990, the Board denied Plaintiff parole. He was scheduled for parole reconsideration in November 1995.

At the time that Plaintiff was initially imprisoned for his 1979 convictions, the Board's policy was to reconsider inmates for parole annually after the initial parole consideration hearing. In 1985, however, the Board amended its rules to provide that inmates serving life sentences could be deferred parole reconsideration for up to eight years, and the Board applied the amended rule retroactively to inmates like Plaintiff.

In 1991, the Eleventh Circuit held in *Akins v. Snow,* 922 F.2d 1558 (11th Cir. 1991), that the U.S. Constitution's Ex Post Facto Clause applies to a change in the Board's rules and regulations regarding the frequency of parole reconsideration. Consequently, the Board suspended its application of the amended rule to inmates such as Plaintiff, who had been sentenced prior to 1985. Thereafter, Plaintiff was reviewed for parole each year from 1991 through 1995. The Board voted to deny him parole each time.

In 1995, the Supreme Court held in *California Department of Corrections v. Morales,* 514 U.S. 499, 115 S.Ct. 1597, 131 L.Ed.2d 588 (1995), that retroactive application of amended parole rules and regulations do not necessarily violate the Ex Post Facto Clause. In response, the Board took the position that *Akins* was no longer binding and resumed its retroactive application of the amended rule to Plaintiff.

---

**2.** Apparently, the State dropped the charge for enticing a child for indecent purposes.

In January 1996, in accordance with its interpretation of *Morales,* the Board notified Plaintiff that he would not be reviewed for parole again for eight years—in November 2003.

In February 2004, the Board again denied Plaintiff parole and informed him that he would be reconsidered for parole in 2009.

In June 2005, Plaintiff asked the Board to reconsider its denial of parole. In July 2005, the Board sent Plaintiff a letter rejecting this request and explaining that reconsideration could be granted only if the Board received "very substantial and convincing information which put an entirely new and more favorable light on your case," which according to the Board had not happened.

In September 2005, Plaintiff filed this action against the Board. His pleading, as amended,[3] contends that the Board's decisions to defer his parole eligibility reviews violate the Ex Post Facto Clauses of the United States Constitution and the Georgia Constitution. He claims the Board was required to consider him for parole annually, as required by the Board's rules that were in effect when he was first incarcerated in 1979.

Plaintiff also contends that the Board has denied him parole in retaliation for having previously filed a lawsuit in state court against the Board and for assisting other inmates in pursuing their own complaints against the Department of Corrections and the Board. He contends that such retaliatory denials violate his First Amendment rights under the United States Constitution.

Finally, Plaintiff complains that the period of his incarceration is unconstitutionally disproportionate to the time served by other inmates convicted of the same or more serious offenses. He contends that his incarceration therefore violates the Equal Protection Clause of the United States Constitution.

On July 31, 2006, the parties filed cross-motions for summary judgment.

## II. Discussion

### A. Legal Standard

Summary judgment is proper when no genuine issue as to any material fact is present, and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c). The movant carries the initial burden and must show that there is "an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). "Only when that burden has been met does the burden shift to the non-moving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment." *Clark v. Coats & Clark, Inc.,* 929 F.2d 604, 608 (11th Cir.1991). The nonmovant is then required to "go beyond the pleadings" and present competent evidence in the form of affidavits, depositions, admissions and the like, designating "specific facts showing that there is a genuine issue for trial." *Celotex,* 477 U.S. at 324, 106 S.Ct. 2548. "The mere existence of a scintilla of evidence" supporting the nonmovant's case is insufficient to defeat a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Resolving all doubts in favor of the nonmoving party, the Court must determine "whether a fairminded jury could return a verdict for the plaintiff on the evidence presented." *Id.*

---

**3.** Plaintiff originally filed his complaint pro se. On December 30, 2005, the Court appointed Plaintiff counsel, and on January 31, 2006, he filed an amended complaint.

### B. Analysis

#### 1. Ex Post Facto Clause Claim

■ The United States Constitution prohibits states from enacting ex post facto laws. U.S. Const., Art. I, § 10, cl. 1. "One function of the *Ex Post Facto Clause* is to bar enactments which, by retroactive operation, increase the punishment for a crime after its commission." *Garner v. Jones,* 529 U.S. 244, 249, 120 S.Ct. 1362, 146 L.Ed.2d 236 (2000). Some retroactive changes in rules governing parole of inmates may violate this restriction. *Id.*

When Plaintiff was convicted of aggravated sodomy and child molestation in 1979, Board policy provided that an inmate's parole be reconsidered every year after the initial, seventh-year hearing. In 1985, after Plaintiff became incarcerated, the Board amended its rules to provide that after the initial, seventh-year review, inmates serving life sentences need only be reconsidered for parole once every eight years. Plaintiff claims that this rule change violates the Ex Post Facto Clause and that the Board is required to consider him for parole annually, in accordance with the rules that were in effect when he was first incarcerated.

The Board contends that this claim is time-barred.

■ Plaintiff brings his Ex Post Facto Clause claim pursuant to 42 U.S.C. § 1983. Federal courts apply their forum state's statute of limitations for personal injury actions to actions brought pursuant to 42 U.S.C. § 1983. *Lovett v. Ray,* 327 F.3d 1181, 1182 (11th Cir.2003). Accordingly, this claim is governed by Georgia's two-year statute of limitations applicable to personal injury actions. O.C.G.A. § 9–3–33; *Williams v. City of Atlanta,* 794 F.2d 624, 626 (11th Cir.1986).

■ Federal law determines when the statute of limitations begins to run. *Rozar v. Mullis,* 85 F.3d 556, 561 (11th Cir.1996). Generally, "the statute of limitations does not begin to run until the facts which would support a cause of action are apparent or should be apparent to a person with a reasonably prudent regard for his rights." *Id.* at 561–62 (internal marks omitted).

■ Based upon these principles, for Plaintiff's claim to be timely, he needed to bring this action within two years of being notified of the Board's policy to reinstitute the amended rule to defer parole reconsideration for inmates serving life sentences for up to eight years. Plaintiff was first notified in January 1996 that his parole reconsideration date was being deferred for up to eight years. However, Plaintiff did not file this lawsuit until September 9, 2005, well beyond the two-year limitations period.

■ Plaintiff argues that his claim is not untimely because he suffered new and separate injuries when the Board denied him parole in March 2004 and deferred his next review until 2009, and again when it denied him parole in June 2006 and deferred his next review until 2014.

The Court rejects Plaintiff's argument because it is foreclosed by the Eleventh Circuit's decision in *Brown v. Georgia Board of Pardons & Paroles,* 335 F.3d 1259, 1261 (11th Cir.2003), where the Eleventh Circuit made clear that a distinct and separate injury does not occur each time an inmate's parole reconsideration hearing is set. The court explained that an inmate's injury, to the extent that it exists, occurs when the Board applies the retroactive policy setting forth a longer parole reconsideration period than was in place

when the inmate was first incarcerated.[4]

■ Plaintiff attempts to distinguish *Brown* by pointing out that in that case the inmate did not also raise a First Amendment retaliation claim. According to Plaintiff, because he contends that the Board retaliated against him in March 2004 and in June 2006, the injuries he suffered at those hearings were distinct and separate from the injury that he suffered in 1996 when the Board first notified him of the Board's change in policy.

The Court is not persuaded. First, Plaintiff cites to no authority to support this argument. Second, the viability of Plaintiff's retaliation claim is a separate issue that is wholly distinct from Plaintiff's Ex Post Facto Clause claim. The essence of Plaintiff's Ex Post Facto Clause claim is that the Board's retroactive application of its rule concerning parole reconsideration violates his constitutional rights. Whether the Board may have also retaliated against him for a previously filed lawsuit and for assisting other inmates in pursuing their own complaints is a separate issue that forms the basis of a distinct legal claim. In short, the Court is not persuaded by Plaintiff's attempt to satisfy the statute of limitations by bootstrapping a timely retaliation claim to an untimely Ex Post Facto Clause claim.

Moreover, as set forth later in this order, the Court finds that Plaintiff's retaliation claim has no merit. Accordingly, even if the retaliation claim could somehow be viewed in conjunction with Plaintiff's Ex Post Facto Clause challenge, it would not change the Court's analysis because Plaintiff did not suffer any cognizable injury under the First Amendment.

It is undisputed that the Board informed Plaintiff in January 1996 that he would not reviewed for parole again for eight years, in November 2003. At that point, Plaintiff was aware, or it should have been apparent to him, that his parole reconsideration was being held outside the one-year maximum established by the Board policy that was in place when he was first incarcerated. Because Plaintiff did not file his claim within two years of the 1996 decision, it is untimely.[5]

■ Finally, even if Plaintiff's Ex Post Facto Clause claim were somehow timely, summary judgment in favor of the Board would still be appropriate because Plaintiff has failed to demonstrate that the retroactive change in the Board's policy created "a sufficient risk of prolonging [Plaintiff's] incarceration." *Garner*, 529 U.S. at 251, 120 S.Ct. 1362; *see also Harris v. Hammonds*, 217 F.3d 1346, 1349 (11th Cir. 2000). In other words, given the nature and severity of the offenses Plaintiff has committed, it is highly unlikely that he would have been granted parole even if he had been reconsidered for parole annually.

---

4. Furthermore, to the extent that Plaintiff argues that the decision to defer his parole reconsideration is a continuing violation of his constitutional rights, that argument has also been rejected by the Eleventh Circuit. *See Lovett v. Ray*, 327 F.3d 1181, 1183 (11th Cir.2003).

5. Citing to an age discrimination case, *Cocke v. Merrill Lynch & Co.*, 817 F.2d 1559, 1561 (11th Cir.1987), Plaintiff also argues that if the Court finds his Ex Post Facto Clause claim to be untimely, it should exercise its inherent powers of equitable tolling. The

Court declines to do so. First, Plaintiff cites to no case where a Court has utilized the doctrine of equitable tolling in a situation involving an otherwise untimely Ex Post Facto Clause challenge to a Board's parole rules. Second, Plaintiff has not demonstrated that equitable tolling would be appropriate in this case because even if his claim were timely, summary judgment would still be appropriate for other reasons. Thus, this is simply not a case where the balance of equities favors tolling the applicable limitations period.

**2. First Amendment Retaliation Claim**

Plaintiff next contends that the Board rendered its adverse parole decisions in retaliation for his having previously filed a lawsuit in state court against the Board and for assisting other inmates in pursuing their own complaints against the Department of Corrections and the Board. He contends that the Board's actions have infringed upon his rights protected by the First Amendment.

■■■■■ The First Amendment forbids state officials from retaliating against inmates for exercising the right of free speech. *See Thomas v. Evans,* 880 F.2d 1235, 1242 (11th Cir.1989). To state a retaliation claim, a prisoner must establish that (1) his speech or act was constitutionally protected; (2) the defendant's retaliatory conduct would likely deter a person of ordinary firmness from engaging in protected speech; and (3) there is a causal connection between the retaliatory actions and the adverse effect on speech. *Akins v. Perdue,* 204 Fed.Appx. 839, 841 (11th Cir.2006). An inmate may establish retaliation by demonstrating that the official's actions were the result of his having filed a lawsuit or administrative grievance concerning his imprisonment. *See Wildberger v. Bracknell,* 869 F.2d 1467, 1468 (11th Cir.1989). The First Amendment also protects an inmate who engages in protected activity on behalf of others. *See Adams v. James,* 784 F.2d 1077, 1081 (11th Cir. 1986). However, mere conclusory allegations of retaliation are insufficient. *See Cain v. Lane,* 857 F.2d 1139, 1142 n. 6 (7th Cir.1988).

Plaintiff first contends that the Board has retaliated against him for having filed a lawsuit in state court against the Board in 1985. In support of this argument, Plaintiff points out that documents pertaining to his state court lawsuit were found in his "clemency" file, i.e., the Board's file pertaining to its consideration of parole for Plaintiff. Plaintiff also relies upon the presence in his file of two letters he wrote in 1997 to prison officials in which he complained about prison conditions and prison management. According to Plaintiff, the presence of these letters in his file further demonstrates that the Board sought to retaliate against him for his complaints.[6]

■■■■■ The Board argues that the Court has no subject matter jurisdiction over Plaintiff's retaliation claim. According to the Board, Plaintiff's retaliation claim is now moot because state officials removed the aforementioned documents that were in Plaintiff's clemency file. The Board further explains that after these documents were removed, the Board again reconsidered Plaintiff for parole and denied him parole in June 2006.

The Court rejects the Board's argument. Standing alone, the removal of these documents does not moot Plaintiff's retaliation claim. Just because the documents are no longer physically located in Plaintiff's file does not necessarily mean that the Board did not or could not in the future retaliate against Plaintiff based upon the Board's knowledge of the content of these documents.

Nevertheless, for the reasons set forth below, the Court finds that Plaintiff's retaliation claim fails.

In order to prevent prisoners from contending that they have been denied parole

---

**6.** Plaintiff makes reference to other documents that are in his clemency file, including two letters written by prison officials which were "critical" of Plaintiff. However, in light of the Court's previous ruling on Plaintiff's motion to compel, these other documents do not constitute record evidence. Accordingly, they are not part of the Court's analysis.

in retaliation for filing litigation against the Board, the Board's policy is to maintain a prisoner's litigation-related documents in a separate file from his clemency file.

■ The Board contends that the litigation documents were inadvertently placed in Plaintiff's file and that upon discovering them, the documents were promptly removed. Plaintiff argues that the mere presence of these documents creates a triable issue of fact on his retaliation claim.

While the Court is troubled by the fact that the Board appears to have violated its own policy concerning the separation of litigation-related documents from an inmate's clemency file, the Court rejects Plaintiff's argument that the presence of these documents constitutes probative evidence of retaliation. Most significantly, Plaintiff has failed to demonstrate a causal connection between the presence of these documents and the denials of his parole in 2004 or 2006.

First, the documents were written in 1985, approximately three years prior to the Board's *granting* Plaintiff parole on June 27, 1988. If the Board were seeking to retaliate against Plaintiff based upon these documents, the Board would most likely have done so in 1988 when the lawsuit was fresh in the Board's mind and in close temporal proximity to the parole decision. To the contrary, the Board granted Plaintiff parole in 1988.

The two letters upon which Plaintiff relies are no more convincing. As with the litigation documents, the Court is not persuaded that the presence of letters written in 1997 in Plaintiff's clemency file constitutes probative evidence that the Board

retaliated against Plaintiff in 2004 and 2006 by denying him parole. Moreover, unlike the litigation documents, it is unclear whether the Board violated any policy by maintaining these letters in Plaintiff's clemency file. Indeed, to the extent that an inmate's letter moves beyond merely criticizing a state official and amounts to threatening the official, it is conceivable that such letters may be highly relevant to an inmate's parole determination. The Court need not decide whether Plaintiff's letters fall into the latter category. Suffice it to say, it is not clear that the Board violated any policy by maintaining these letters in his file.

Accordingly, after careful review, the Court finds no merit in Plaintiff's argument that the litigation documents and letters found in his clemency file were a substantial or motivating factor in the Board's decisions to deny him parole in 2004 and 2006.[7] Plaintiff has failed to establish a suspect connection between these documents and his parole denials, and there is ample evidence in the record that the basis for his parole denials was the severe nature of his offenses. *See Farrow v. West,* 320 F.3d 1235, 1248–49 (11th Cir.2003) (explaining need to establish causal relationship between protected activity and adverse action); *see also Jackson v. Fair,* 846 F.2d 811, 820 (1st Cir. 1988) (a plaintiff must show that the alleged retaliatory conduct would not have occurred but for the retaliatory motive). Thus, the Court grants summary judgment to the Board on Plaintiff's retaliation claim.

### 3. Equal Protection Claim

Finally, Plaintiff argues that the period of his incarceration is unconstitutionally

---

**7.** Plaintiff also alleges in his complaint that the Board retaliated against him for helping other inmates file complaints. However, there is no evidence in the record to suggest that Plaintiff did in fact assist other inmates or that the Board was even aware of such assistance.

disproportionate to the time served by other inmates convicted of the same or more serious offenses. He contends that his incarceration therefore constitutes an Equal Protection Clause violation.

The Equal Protection Clause of the Fourteenth Amendment provides that "[n]o State shall ... deny to any person within its jurisdiction the equal protection of laws." U.S. Const. amend. XIV, § 1. "The central mandate of the equal protection guarantee is that '[t]he sovereign may not draw distinctions between individuals based solely on differences that are irrelevant to a legitimate governmental objective.'" *Lofton v. Sec'y of Dept. of Children & Family Servs.*, 377 F.3d 1275, 1277 (11th Cir.2004) (quoting *Lehr v. Robertson*, 463 U.S. 248, 265, 103 S.Ct. 2985, 77 L.Ed.2d 614 (1983)).

■ Plaintiff does not contend he is a member of a protected class. Rather, he relies upon the Supreme Court's decision in *Village of Willowbrook v. Olech*, 528 U.S. 562, 564, 120 S.Ct. 1073, 145 L.Ed.2d 1060 (2000), in which the Court found that a "successful equal protection claim may be brought by a 'class of one,' where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." Accordingly, a person proceeding under this theory must establish that he or she has been treated differently from others similarly situated, and that the treatment was irrational and wholly arbitrary, as well as intentional. *Id.*

■ Plaintiff relies upon a variety of statistics in an attempt to show that his sentence is disproportionate to the time served by other inmates convicted of the same or more serious offenses. According to Plaintiff, a statistical analysis establishes that the probability of Plaintiff's incidental non-release by the Board after serving twenty-five years and ten months in prison is less than 1.25%, and the probability of Plaintiff's incidental non-release by the Board after serving sixteen years and eight months in prison on parole revocation is less than 3.5%. Plaintiff therefore argues that it is statistically improbable that he has not been paroled when the Board has paroled hundreds of similar offenders.

The Court is not persuaded. In *Fuller v. Georgia State Board of Pardons & Paroles*, 851 F.2d 1307, 1310 (11th Cir.1988), the Eleventh Circuit held that an unexplained statistical showing of disparate treatment can raise an inference of an equal protection violation. However, the Eleventh Circuit also made clear that a plaintiff seeking to raise an inference of discrimination through the usage of statistics must set forth "exceptionally clear proof." *Id.*

Plaintiff has not satisfied this high standard. Although the statistics may indicate that the probability of Plaintiff's incidental non-release is low, he has failed to demonstrate an irrational or invidiously motivated decision by the Board. *See Washington v. Davis*, 426 U.S. 229, 242, 96 S.Ct. 2040, 48 L.Ed.2d 597 (1976) (merely showing that there is a discriminatory effect to a particular action or policy is not sufficient to establish an equal protection violation).

Most importantly, Plaintiff cannot demonstrate that the Board's decision was wholly arbitrary or irrational. The Supreme Court has indicated that convicted sex offenders who reenter society are "much more likely than any other type of offender to be rearrested for a new rape or sexual assault." *McKune v. Lile*, 536 U.S. 24, 33, 122 S.Ct. 2017, 153 L.Ed.2d 47 (2002). Plaintiff's history proves this unfortunate reality.

At the time Plaintiff committed the offenses of aggravated sodomy and child molestation in 1979, he was on parole for two counts of kidnapping arising from offenses against two young boys. On June 27, 1988, Plaintiff was granted parole with respect to the 1979 offenses with special conditions not to have any contact with minor males and to participate in counseling with a psychiatrist or psychologist. On November 21, 1989, Plaintiff's parole was again revoked because he pled guilty to kidnapping on an indictment for kidnapping and enticing a child for indecent purposes. The victim in that case was a six-year-old male child who was taken by Plaintiff from a retail establishment.

Thus, on three separate occasions, Plaintiff has committed serious offenses involving children, and two such occasions occurred while Plaintiff was on parole. Based upon Plaintiff's history of recidivism and the serious nature of the offenses, the Board clearly has a rational basis for denying him parole.

Moreover, the statistics upon which Plaintiff relies do not fully take into account the fact that Plaintiff was already granted early release and promptly re-offended while out on release. Accordingly, it is far from clear whether the inmates to whom Plaintiff compares himself are in fact similarly situated. Indeed, it is undisputed that there are no other life-sentenced offenders who have been granted parole since Plaintiff's parole was revoked in 1989 who have been found: (1) guilty of five separate sex-related offenses against children (ten years or younger) and (2) who committed three of the offenses while on parole. For these reasons, Plaintiff's statistics are of dubious probative value.

The fact that the Board has determined that Plaintiff's release is not compatible with the interests of society does not mean that his constitutional rights have been violated. Most significantly, there was (and continues to be) far more than a rational basis to deny Plaintiff parole given the nature of the crimes he has committed, his criminal history, and the grave threat to children and the community as a whole that he poses.

For all of these reasons, the Court grants summary judgment to the Board on Plaintiff's equal protection claim.

### III. Conclusion

For the foregoing reasons, the Court GRANTS Defendants' motion for summary judgment [40] and DENIES Plaintiff's motion for summary judgment [39]. The Clerk is DIRECTED to close this case.